FRENCH
*v.*
MECHANICS
AND TRADERS
BANK.

</div>

---

CHAPMAN, Assignee *v.* THE NEW ORLEANS GAS LIGHT AND BANKING COMPANY et al.

<div style="text-align:right">

4    153
125    147

</div>

Where certain shares of the stock of a bank were attached, and, on a judgment rendered in favor of the plaintiff in attachment, were sold under execution, an intervenor in the attachment suit, who claimed the stock, and was subsequently adjudged to be the owner of it by a superior tribunal, on a writ of error sued out by him, but which did not suspend execution, cannot recover against the bank, the value of the stock, with profits, dividends, &c., for permitting the marshal to transfer the stock to the purchaser of the judicial sale, and for refusing to transfer the shares to him on the ground of their sale and transfer to

the the purchasers at the marshal's sale; nor will the fact that the stock was sold without appraisement, at a time when an appraisement was not considered necessary, though subsequently adjudged to be so, subject them to liability, there having been no neglect on their part, and they being justified in believing that the public officer acted according to his duty.

Whatever effect the want of appraisement may have on a sale of moveable property under execution between the parties to the sale, third persons cannot consider such a sale as null on that account.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *Lockett*, *Goold*, and *Roselius*, for the appellant. *L. Janin*, for the defendant. *Grymes*, for the parties cited in warranty. The judgment of the court *(Slidell*, J. not sitting, being a stockholder in one of the banks,)* was pronounced by

EUSTIS, C. J. On the 4th of May, 1841, a suit was instituted in the late Commercial Court of New Orleans, by *James W. Zacharie & Co.* against *Francis C. Black*, in which certain shares of the stock of the Gas Light and Banking Company and of the Carrollton Railroad and Banking Company, were attached. *Black* appeared in the suit, and on his application it was removed from the Commercial Court to the Circuit Court of the United States for this district. *Black* pleaded that, prior to the attachment, he had assigned the stocks attached by a deed of trust, for the benefit of all his creditors, to *James H. Chapman* of South Carolina, who is the plaintiff in the present suit. After the removal of the suit by attachment, *Chapman* filed a petition of intervention, and became a party to it, in order to protect the interests secured under the deed of trust. The plea of *Black*, the defendant, the object of which was to release the stocks from the effect of the writ of attachment, was overruled by the court on the 13th of January, 1842, and in March of that year a verdict was rendered in favor of *Zacharie & Co.* against *Black*, for the sum of $8,000, and judgment rendered on it accordingly. From this judgment *Black* took his writ of error to the Supreme Court of the United States, but gave a bond for costs only. *Chapman's* petition was dismissed by the same judgment, and he also took his writ of error, which was allowed as a supersedeas; but the judge afterwards rescinded that part of his order which gave effect to the writ of error as a supersedeas, on the ground of the insufficiency of the bond given by *Chapman*. The Supreme Court of the United States reversed the judgment of the Circuit Court, and remanded the case with directions to award a *venire facias de novo*, on the ground that the Circuit Court erred in ruling that there was a sufficient debt established by the evidence to maintain the attachment, and also in directing the jury that the delivery of the stock was not complete, unless the transfer was entered upon the books of the banks. The case is reported in 3d Howard, 509, and was decided in 1845.

On the 11th of April, 1842, the plaintiffs, *Zacharie & Co.*, took out an execution on the judgment against *Black*, and the stocks before mentioned were seized under it, and after due advertizements were sold by the marshal. At this sale *Jules Lavergne* became the purchaser of one hundred shares, *G. Didier* of ninety, *James W. Zacharie* of three hundred and ten shares of the Gas Bank stock, and *James W. Zacharie & Co.* of the six hundred shares of the Carrollton Bank stock, all those stocks having been attached in the suit, and claimed in the petition of intervention of the present plaintiff, *Chapman*.

The present suits, which have been consolidated and argued together, are instituted by *Chapman* against the two banks, under the assignment from *Black* alleged to have been made previous to the attachment suit, for the purpose of

compelling the transfer and delivery of the stocks thus attached and sold, or, on default thereof, for the recovery of their value, with the profits, dividends, &c.

The defendants set up the marshal's sale under those proceedings as a defence to the action, and call the purchasers, and the late marshal of the United States in warranty, to defend the suit, and ask such judgment against them as may be rendered against the defendants. The parties called in warranty pleaded the general issue, with an averment that that they are not bound to indemnify the defendants. The District Court rendered judgment in favor of the defendants, and the plaintiff has appealed.

On the 22d of March, 1847, the case of *Zacharie & Co.* v. *Black* having been remanded to the Circuit Court, judgment was rendered in favor of the defendant as well as of the intervenor against the plaintiff, and these suits were instituted in April following. The district judge decided the case on the effect he gave to the judgment of the Circuit Court, which was afterwards reversed, as we have seen, on a writ of error. He considered that by that judgment the right of *Zacharie & Co.* to attach the stock standing in *Black's* name on the books of the banks, and *Chapman's* title to them under the assignment, were directly adjudicated upon; that, if that judgment had never been appealed from nor reversed, the validity of the marshal's sale could not be questioned; and that, in that respect, there is no difference between the consequences of no appeal having been taken, and one having been taken which did not operate as a supersedeas, as in the present case.

It appears to us that the only question to be examined under the issue made between the plaintiff and the defendant is, as to the responsibility of the latter for their acts as stated in the petition. They refused to deliver and transfer to the plaintiff the stocks assigned to him by *Black,* on the grounds that they were attached, and were afterwards sold under execution; the validity o these grounds must, therefore, be considered.

The Supreme Court of the United States determined that the stocks were not liable to the attachment of *Zacharie & Co.*, but passed, by the assignment, to the plaintiff in this suit—not, however, with respect to the legal title but the equitable title, which became thereby vested in the assignee, so as to bind the attaching creditors as well as the banks, as soon as they had notice thereof, and that the attaching creditors in this case had notice previous to the issuing of the writ of attachment.

In relation to the non-delivery, or refusal of transfer on the books of the banks, previous to the service of the attachment, which was made on the 4th of May, 1841, each of the banks acted on reasons applying to itself alone.

The Carrollton Bank held the stock in pledge for a stock note of *Black,* and until that note was paid the transfer of the stock could not be insisted on. The refusal of the Gas Bank to transfer the stock is given in the letter of its cashier, of date the 20th of April, 1841. The power of attorney from *Black* to transfer the Gas Bank stock was in favor of the cashier, but he, not considering it sufficiently formal, returned it, with a request that another might be sent in conformity with the conditions he suggested. At all events, he refused to act as the attorney of *Black* in transferring the stock, and gave immediate notice of his refusal to the present plaintiff. He was not bound to accept the mandate, and no responsibility can attach to the bank for his refusal to act under it. Nor do we find any act amounting to a default on the part of the Gas Bank, in refusing to transfer and deliver the stock to the plaintiff, up to the time of the attachment; and after that, we think, the attachment was a sufficient reason for its non-delive-

ry and refusal to transfer. Indeed, it seems, from the view the Supreme Court of the United States took of the matter, that the transfer or non-transfer of the stocks on the books of the banks precludes no right whatever, inasmuch as it was the equitable interest in them, and not the apparent title on the books, which constitutes the ownership. The case does not appear to have been prepared with a view to any responsibility as to mere delay on the part of the banks in relation to the transfer and delivery; the effect of their acts touching the sale under execution remains only to be considered. In relation to that ground of responsibility the doings of each are similar, and can be examined together.

We have seen that *Black* was a party defendant in the Circuit Court of the United States, and that *Chapman*, the plaintiff in this suit, was a party by his intervention.

The petition of intervention set up the ownership of the stocks, and averred that they were wrongfully levied upon by the attachment, and prayed in conclusion that it be dismissed, and the petitioner decreed to be the owner thereof under the assignment from *Black*, &c. The Circuit Court decreed that judgment be entered in favor of *Zacharie & Co.*, plaintiffs, against the defendant, *Francis C. Black*, for the sum of $8,000, with costs of suit, and that the petition of intervention of *James Chapman*, claiming the stocks of the Carrollton and Gas Banks attached in this case, be dismissed at his costs. On this judgment a *fieri facias* was issued, and the stocks attached were levied upon and sold. After the sale, the marshal transferred the stocks to the purchasers on the books of the banks.

It is urged by the counsel for the plaintiff that this judgment decreed no privilege on the stocks attached. This is true; but *Black* having appeared in the Circuit Court, the judgment against him was personal, and a *fieri facias* was lawfully issued on it. The claim of *Chapman* having been determined on in favor of the attaching creditors, the stocks were necessarily subject to be seized as *Black's* property and sold as such, unless the execution was stayed. The action of the banks appears to be confined to their permission to the marshal to transfer the stocks to the several purchasers on their books. The subsequent reversal of the judgment of the Circuit Court does not affect their responsibility, which seems to be confined to this act. Under the circumstances, we do not see how the banks could have acted otherwise. True they had notice of the antagonist claims of *Chapman*, but those claims had been adjudicated upon, and he had suffered execution to issue, when he could have stayed it by giving security. He thought proper not to do so, but to leave the process of the court to its result. We do not think the defendants were bound to impede or arrest it, and in authorizing the public officer to do his duty in carrying into effect a judicial sale by having the use of their transfer book for the purpose of vesting the legal title in the purchasers of the stocks, we think they were justified. They were not bound to assume the responsibility towards the purchasers of retarding or defeating their purchase. But it is contended by counsel that the sale under execution is a nullity, in consequence of their having been no appraisement made of the stocks, and the cases of *Phelps* v. *Rightor*, 9 Rob. 531, and *Stockton* v. *Stanbrough*, 3 Ann. 390, are referred to in support of that opinion.

That appraisement of moveable property was necessary to the validity of a sale under execution, was first determined in the case of *Phelps* v. *Rightor*, in 1845. It is admitted by counsel that until this decision, sheriffs did not consider it necessary to appraise moveable property, and never appraised it; such at least

was the uniform practice in New Orleans. Whatever effect the want of ap- CHAPMAN
praisement may have on a sale of moveable property, under execution between NEW ORLEANS
the parties to the sale, yet third persons cannot consider a sale of moveables as GAS LIGHT AND
null on that account. BANKING COM-
PANY.

When the stocks were advertized for sale the plaintiff, by his attorney, gave
notice to the banks of his prosecution of his writ of error, but of nothing else,
except of his persisting in his claims under his assignment. Had the attorneys
applied to the Circuit Court to arrest the proceedings for want of an appraise-
ment previous to the sale, there is reason to believe that the sale would have
been arrested and an appraisement made; but it is obvious that neither of the
parties thought it material. We do not think that, as matters now stand, to wit,
the sale of the stocks left entire and no attempt made by the plaintiff to disturb
it, or to have any recourse whatever against the purchasers, the banks can be
held liable for permitting the transfer to be made by the marshal, although the
sale was made without any appraisement. They were justified in believing that
the public officer acted according to his duty, and it was a fair presumption *omnia
rite acta fuisse*. Besides, by the admission, there was no neglect on their part,
and they merely gave effect to the acts of a public officer, in the forms in which
they had been usually vested.

But we are asked to give judgment against the purchasers of the stock; and
it is said that the stocks purchased by *Zacharie* and *Zacharie & Co.* are still in
their names on the books of the banks. This suit is not against them; it is against
the banks on the issues we have stated. *Zacharie & Co.* are cited in warranty
to defend the banks in this suit, but the plaintiff has prayed for no judgment
against them. Why the sales should be permitted to stand on the case present-
ed by the plaintiff, is a matter resting exclusively with him. If the price be an
adequate one, it is his interest that they should remain in force; but, in the mean
time, to make the banks liable to him for the stocks, or their value, would, it
seems to us, be the height of injustice. *Judgment affirmed.*