## No. 8698.

### ALEXIS RIBET, AGENT, VS. JACQUES BATAILLE ET AL.

A pledge of bonds, stocks, notes, etc., made by delivery of them is valid, as well against third persons as against the pledgor, if made in good faith.

Simulation of ownership of bonds and stocks may be shewn by parol proof, as between the parties to the simulation.

Third parties, who have dealt with the apparent owner, cannot be prejudiced by the revelation of the real ownership, if they have acted in good faith.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*Breaux & Hall* for Plaintiff and Appellant.

*F. D. Chrétien* for Defendants and Appellees.

*Albert Voorhies* on the same side.

*A. J. Lewis* on the same side.

The opinion of the Court was delivered by

MANNING, J.   The suit is by Ribet, as agent for Leon Bataille, claiming of his brother Jacques, certain bonds, stocks, the dividends collected upon them, and insurance money for property burnt, all of which were placed in the defendant's hands or came into his possession by virtue of a power of attorney from Leon to Jacques, entrusting him with the management of his business.   The prayer is that Leon be recognised as the owner of the bonds and stocks, and that Jacques be ordered to deliver them or pay their value, alleged to be fourteen hundred and ten dollars, and also account for the dividends and insurance, etc., charged to amount to $3,195.

The bonds and stocks were in the possession of Pierre Foch, who is made co-defendant, and the prayer for the delivery of them and the payment of dividends is made against him also.

The procuration to Jacques Bataille was given in July, 1873, in New Orleans, and Leon left here immediately thereafter.   He had come from France to San Francisco in February, 1870, and there remained until October, 1872, when he came to New Orleans.   He claims to have

made the money in California which was invested in the bonds and stocks, but his business there, his earnings and mode of life have been subjected to searching scrutiny, and it is manifest that he did not and could not have made, over and above needful expenses for the most frugal living, the sum stated by him as having been brought to New Orleans. Several witnesses detail circumstances, and Leon's own statements accord with them, which put his impecuniosity, at the time of his arrival here and during his stay, beyond any doubt.

The whole of this property in fact belonged to Jacques. Either from some apprehended business trouble, or an innate love of tortuous ways, he had placed it in Leon's name, and then took from Leon a power of attorney to manage it, and he did manage it. He seems to be a thriving person with some business capacity. Leon never got along except when some one was giving him a regular salary. As between these two brothers, that is the state of the case, as they both know full well.

But the plaintiff says the defendant is estopped from denying the plaintiff's title by his own repeated solemn asseverations. Certainly they are numerous enough. Jacques received from Leon a power of attorney to manage this business as Leon's, thereby acknowledging the bonds, stocks, etc., belonged to Leon. He once brought suit as agent of Leon to recover damages of Ribet for detention of these identical bonds and stocks, Ribet claiming to detain them as Jacques' property, and Jacques vehemently denying that he owned them, and asserting that they were the property of Leon. In another suit of Ribet against him, he answered that these bonds, etc., belonged to his brother and sequestered them as his brother's agent, of course, swearing to these facts. When he collected the insurance on a stock of groceries which had been burnt, he swore again they were Leon's goods. The false swearing is repeated unblushingly whenever occasion required, and the false pretence of another's ownership is kept up, until Leon determined that turpitude should not be confined to one member of the family, and brought this suit to take advantage of the confidence his brother reposed in him, and reap reward from abusing it. Seven years had passed in which Leon had never called on his brother to account for the receipts from his business. His letters (for he had gone back to France) contain expressions of gratitude to his brother for kindness while here, and each writes the other with a fraternal warmth of feeling that would be charming anywhere else than in juxtaposition to the charges and counter-charges in these pleadings. But there is not a word of this business. No inquiry how it is prospering, none about the dividends, whether paid or not, no call for remittances, no complaint of non-receipt of them, no acknowledgment

of any received.  These seven years are a blank, a silence unbroken until Leon instituted this suit.  So far as these two are concerned, we may repeat here the adjuration of the priestess to the intruder into the sacred grove, quoted years ago by the Great Chief Justice of this Court on a similar occasion:

> " Procul, O ! procul este profani,
>  *    *    *    totoque absistite luco."

If third parties had dealt with these two on the faith of the apparent ownership created by their joint acts and representations, they could not be prejudiced by the revelation of the true ownership now for the first time disclosed.  But the only third party interested is Foch, and his claim is based on the fact of ownership by the defendant Jacques Bataille.

Foch lent a thousand and thirty-one dollars to him, and received in pledge the bonds and stocks.  The bonds were transferred to him on the books of the company, and the certificate of shares of stock were delivered to him.  The shares were in the name of Jacques on the books.  The bonds are negotiable instruments, payable to bearer, and transferable by delivery.  No further formality was necessary.  Rev. Civ. Code, Art. 3158; Smith vs. Crescent City Co., 30 Ann. 1378; Factors Ins. Co. vs. Marine Dry Dock, 31 Ann. 149; Pitot vs. Johnson, 33 Ann. 1286.

There is no question of Foch's good faith, none of the reality of the pledge.  He was ignorant of the complications produced by the acts and declarations of the brothers, and is not affected by them.  No dispute had then arisen between them.  Leon's assertion of ownership had not then been made.  Besides, even if the plaintiff were the real owner of the bonds and stocks, he had enabled his brother to make the transfer and deceive an innocent party who was ignorant of his pretended claim, and could not by any diligence have known of it.  Giovanovich vs. Citizens' Bank, 26 Ann. 15.

Objection was made to the defendants' introduction of parol proof to establish the true ownership of the bonds and stock, which was properly overruled.  The exclusion of testimony to that effect would have enabled the plaintiff to reap the fruits of iniquity through the instrumentality of a court of justice.  The proof could affect no one but the parties to the contrivance designed by both to simulate ownership.

The judgment below was in favor of the defendants.  It is affirmed with costs.