(38 South. 204.)

No. 15,409.

STATE ex rel. McCAY v. NEW ORLEANS COTTON EXCHANGE.

(March 13, 1905.)

CORPORATIONS—DUPLICATE STOCK CERTIFICATE —INDEMNITY.

Inasmuch as title to a certificate of stock passes by mere delivery, without the necessity of notice to the corporation, and inasmuch as a corporation issuing a duplicate certificate while the original is outstanding might be responsible on both certificates to bona fide holders, the court should not order the issuance of such duplicate, in place of a lost or mislaid original, without bond being given to hold the corporation harmless against the reappearance of the original in the hands of a bona fide holder, unless, upon the facts, it be reasonably certain that there is no danger of such reappearance.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by the state, on the relation of Nellie E. McCay, executrix, against the New Orleans Cotton Exchange. Judgment for plaintiff, and defendant appeals. Modified.

Saunders & Gurley, for appellant. Clegg & Quintero, for appellee.

PROVOSTY, J. Not knowing what her deceased husband did with a certificate of the defendant's company's stock which he had, and which continues to stand in his name on the books of the defendant company, the plaintiff, after vain searches, and after publishing the advertisements required by law for lost instruments, brings this suit to compel the defendant company to issue to her a duplicate certificate.

Defendant is willing to accede to the demand, but says that plaintiff should be required to give bond to hold it harmless against the reappearance of the missing instrument. It says, very properly, that it has in no wise contributed to bringing about the situation from which plaintiff is seeking relief, and consequently should not be re-

quired to bear any part of the risk attending the relief.

Plaintiff contends that defendant will run no risk; that there is no danger of the instrument reappearing; and that, even if it does, defendant will be protected by the judgment of the court in this case, and, furthermore, is amply protected by the provision in its charter requiring the transfer of its stock to be registered on its books.

The law part of this defense is in opposition to the well-settled doctrine that title to such a certificate passes by mere delivery, without the necessity of notice to the company. Smith v. Slaughter-House Company, 30 La. Ann. 1378; Factors' & Traders' Ins. Co. v. Marine Dry Dock Co., 31 La. Ann. 149; Pitot v. Johnson, 33 La. Ann. 1286; Ribet v. Bataille, 35 La. Ann. 1171; Crescent City, etc., Co. v. Deblieux, 40 La. Ann. 155, 3 South. 726; Kern v. Day, 45 La. Ann. 71, 12 South. 6; Balkins, etc., Co. v. Tomkinson (1893) A. O. 403, 63 L. J. Q. B. 134; Re Bahia, etc., L. R. 3 Q. B. 584, 37 L. J. Q. B. 166.

Therefore the certificate in question may have been transferred by plaintiff's husband, and some one else be vested with every right in connection with same, and plaintiff be absolutely without any right whatever. Under these circumstances the only question must be the one of fact as to whether there is any danger of such a transfer having been made.

The evidence in the case is tersely and lucidly stated in the brief submitted in behalf of plaintiff as follows:

"It is admitted that the stock stands in the name of the deceased, McCay, and that his wife is the testamentary executrix of his succession.

"The succession record offered in evidence shows that the share of stock was inventoried among the assets left by the deceased.

"Mrs. McCay testified that she was familiar with her husband's business affairs, and that she believes her husband never disposed of the share of stock involved here; that she has carefully examined all his papers and documents, and has failed to find the certificate; and that she verily believes that said certificate has been lost, mislaid, or destroyed.

"Mr. W. B. Thompson, the intimate friend and partner in business of McCay, testified that he knew McCay held the share of stock at the time of his death; that the certificate has been lost; that he searched diligently among the papers of the firm and among the private papers of the late McCay, to all of which he had access, and the certificate could not be found. Mr. Thompson made demand upon the officers of the Cotton Exchange for a duplicate, and these officers stated that these proceedings would have to be had before they would issue the new certificate.

"The relator advertised in the public press the loss of the certificate, and through the same medium gave warning to the public against negotiating said stock. Notice was also given that application would be made for a duplicate certificate.

"There is nothing in the evidence to show that any other person has ever appeared as claimant of the certificate of stock. No one has ever given notice of possession or ownership of the old certificate. McCay, who died in July, 1903, was a man of means; a lender, and not a borrower; and it is not probable that he would have pledged his certificate of stock by virtue of which he maintained his membership in the New Orleans Cotton Exchange. Admitting arguendo that he had pledged the certificate, no claim has been made against his estate, and one and a half years have elapsed since his death."

The Cotton Exchange is not a dividend-paying institution, and its stock may remain pledged for any number of years, and no one outside of the immediate parties to the pledge be any the wiser. In the brief of defendant's counsel is given an instance of a certificate of this stock turning up in pledge 14 years after the death of the pledgor.

Under the circumstances no prudent business man would, we think, be willing to run the risk of this certificate turning up in the hands of some bona fide holder. If it did, and plaintiff had disposed of the new certificate to a like holder in good faith, the defendant would be responsible on both certificates. Cases above cited. Also Thompson on Corp. vol. 2, § 2044; Clark and Marshall on Private Corp. vol. 2, § 426; Helliwell on Stocks & Stockholders, p. 314.

The case of Harris v. Banks, 5 La. Ann. 538, cited in plaintiff's brief, was distinguish-

ed in the hereinabove cited case of Smith v. Slaughter-House, 30 La. Ann. 1378, as follows:

"We find nothing in Harris v. Bank of Mobile, 5 La. Ann., 538, which militates against the views we have expressed. That case is not applicable to this, because the title under which Harris claimed the stock seized by the bank was acquired more than four months after the seizure; and it was alleged that his title was simulated and fraudulent, as it afterwards was proven to have been."

Bank of Mobile v. Harris, 6 La. Ann. 811.

The case of State ex rel. Phillips v. N. O. Gaslight Co., 25 La. Ann. 413, to the effect that "the stock cannot be transferred by relator except upon the books of the respondent and the production of the certificate; this is a protection to the company"—is in direct opposition to the long list of cases cited above to the effect that such transfer may take place without notice to the company. To say that the certificate may be validly sold or pledged without notice to the company is to say that the purchaser or pledgee gets a title which the company, as well as everybody else, is bound to respect; in other words, a title against which the company cannot protect itself. The decision must be considered as having been overruled.

The case of Seaton v. N. O. R. Co., 51 La. Ann. 910, 25 South. 465, was decided on its facts. The improbability of the reappearance of the lost document was there made reasonably certain.

The case of Friedlander v. Slaughter-House Co., 31 La. Ann. 523, where a transfer made under the compulsion of a judgment was permitted to defeat the title of the holder of the stock, is expressly put by the court on the peculiar facts of the case as furnishing ground for estoppel. In the instant case no one knows what has become of the certificate, and hence no one can tell whether, in case the duplicate certificate were ordered to be issued, there would be any grounds for estopping the holder of the original certificate if it eventually turned up. Besides, even as based on estoppel, the correctness of that decision may well be doubted. An owner who has his property securely locked up in his strong box ought to be able to rely upon his possession as a sufficient protection to his rights. Judicial proceedings to which he might have been made a party, but was not, ought not to divest his title, even though he had knowledge of their pendency. To say that a man who has the ownership and the possession of a movable over which two other persons are litigating, and who neither by word nor deed has done anything to lead any one to suppose that he does not intend to defend his title against all comers, must, under penalty of losing his title, join in the litigation, would be, it seems to us, to impose upon the business community altruistic principles little in consonance with the egoism which as yet there prevails.

The certificate of stock in this case is shown to be worth $6,000.

It is therefore ordered and decreed that the judgment appealed from be amended so as to read as follows:

It is ordered, adjudged, and decreed that the alternative mandamus herein issued be made peremptory, and, accordingly, the New Orleans Cotton Exchange, through A. Britton, Esq., president, and Henry G. Hester, secretary, is hereby commanded to issue to the relatrix, Mrs. Nellie E. McCay, testamentary executrix of the late T. S. McCay, a duplicate certificate for one share of the capital stock of the New Orleans Cotton Exchange, in lieu of certificate No. 1,987, upon the said Mrs. Nellie E. McCay, executrix, furnishing bond with good and sufficient surety in favor of the said New Orleans Cotton Exchange in the sum of $6,000, conditioned to hold the said New Orleans Cotton Exchange harmless against the reappearance of the said original certificate No. 1,987 in the hands of a bona fide holder.

It is further ordered, adjudged, and de-

creed that, in case the said Mrs. Nellie E. McCay, executrix, rather than furnish such bond, is willing to accept a duplicate certificate showing upon its face that it is issued in lieu of the original certificate No. 1,987, and is to be void in the event of the reappearance of the original certificate in lieu of which it issued, then that, at her option, and in place of the said certificate hereinabove ordered to be issued to her upon her furnishing bond, the said New Orleans Cotton Exchange, through its said officers, is hereby ordered to issue to her such a conditional certificate without her furnishing bond. All costs to be paid by relatrix.

MONROE, J. I concur in the decree, but am unable to concur in the opinion in so far as it apparently accords perfect negotiability to certificates of stock.