Statement of the Case.
MONROE, J.
Relator seeks to compel defendant to take up and cancel three of its certificates of stock, originally issued to Ben. R. Mayer, to wit, certificates Nos. 175 (for 10 shares), 227 (for 20 shares), and 229 (for *139 15 shares), and to issue other certificates therefor. Defendant answers that it has no objection to complying with relator’s demand in so far as certificate No. 175 is concerned, but with reference to 'the others it objects, on the grounds (stated, in substance) that its capital stock is divided into 1,000 shares, for all of which certificates have been issued; that from a certain record in the district court it appears that Louis E. Leury sued Ben. R. Mayer, claiming to be an owner,-in indivisión, of 20 of said shares, represented by certificate 127, and obtained judgment recognizing him to be the owner of an undivided interest, being the one-fiftieth of respondent’s capital stock represented in said certificate, and ordering said interest to be sold to effect a partition; that respondent is informed and believes that “part of the certificates described and sued for in the petition herein, as being the property of the relator herein, were originally issued to represent the said undivided one-fiftieth interest; * * * that it cannot issue the certificates herein claimed and the certificates for the undivided one-fiftieth interest referred to in the suit of Leury v. Mayer without thereby increasing its capital stock,” which it cannot lawfully do; “that before it can be required to issue the certificates ■ herein claimed the several parties asserting conflicting claims to the ownership of the said fiftieth interest in said bank should be- cited hereto and should be ordered to litigate between themselves, in order to determine who is the true and legal owner of the interest sued for by the said Leury in the suit above mentioned, and who is, justly and legally, entitled to claim and demand from respondent certificates for the stock representing said interest. Respondent is informed that besides the relator * * * the Whitney Central National Bank of New Orleans also claims to be the owner of a portion of the undivided fiftieth interest sued for by said Leury; * * * that said Whitney Central National Bank and the said relator herein were not parties to the suit of the said Leury, and are not bound by the judgment therein rendered, and the ownership of the said one-fiftieth interest can be determined only by citing herein the said Louis F. Leury, the said Louisiana State Bank, and the said Whitney Central National Bank and Benjamin R. Mayer, through whom said bank claims, in order that, by litigation and proper judicial proceedings between said parties, it may be determined to whom the certificates for the one-fiftieth interest should be issued. Respondent shows that it is ready and willing to issue said certificates to the parties entitled, but that it cannot issue certificates for a larger amount than the authorized capital stock. * * * The premises considered, respondent prays that the Louisiana State Bank, relator herein, be ordered to litigate and determine, contradictorily with Louis E. Leury and the Whitney Central National Bank and with Benjamin R. Mayer, the question as to the real and true ownership of the said one-fiftieth interest, so as to determine the person who is really and legally entitled to claim the certificate for the said undivided one-fiftieth interest, and respondent prays for all general and equitable relief.” On the trial of the case relator offered the certificates sued on, which are in the usual form, and bear, upon their backs, the usual transfers and powers of attorney, in blank, signed by Ben. R. Mayer, the person to whom the certificates were issued. Relator’s president was then sworn as a witness, and testified as follows:
“I am president of the Louisiana State Bank (looking at certificates Nos. 175, 227, and 229). This is Mr. Mayer’s signature. The Louisiana State Bank owns these certificates. (It was' then admitted that the certificates had been presented to defendant for cancellation, and new certificates demanded, and that the demand had been refused.) The certificates were pledged to us January 27, 1907, on pledge notes taken by us from the Whitney Central National, *141 which held as collateral to Mr. Mayer’s notes (the certificates came to us from the Whitney Central), the original . amount of which was $22,500 on 75 shares, represented by certificate 227, for 20 shares, certificate 228, for 20 shares, 229, for 15 shares, and certificate 31 for 20 shares. AVe acquired the ownership March 3. 1909. We closed out the collateral on March 3d, this year, and credited Mr. Mayor's note with the proceeds of the stock at $325 per share. This credit was against the original loan, made January 9, 1907. That was the $22,500 note. This was not the original note, but was a continuation of the loan. Q. Did the Louisiana State Bank hold the collaterals, and especially the shares of stock forming the basis of this suit during all the time from the date of the original loan, January, 1907, until the transfer of the stock, in part settlement of the pledged note of Mr. Mayer in March, 1909? A. Yes. O. Look at this note (producing note), and see if that is the note of Ben. R. Mayer to secure the payment of which this stock was pledged? A. Yes, sir.”
Relator’s counsel then offered the note referred to. being the pledge note of Ben. R. Mayer for $20,500 secured by various stock certificates, including those here sued on. Defendant then offered the “petition” in the suit of Leury v. Mayer, referred to in its answer (being No. 947, of the docket of the district court), and the decree of this (Supreme) Court, affirming the judgment, which were admitted over relator’s objections. The evidence thus offered shows that in November, 1905, Louis F. Leury sued Ben. R. Mayer, alleging that he (plaintiff) was the son of J. Edgar Leury and Hannah Leury, his wife; that 1ns parents were married and lived under the regime of the community; that both were dead and that he had been recognized as the sole heir of his mother; that while they were so living his father had acquired 20 shares of the stock of the Bank of Baton Rouge (defendant herein), represented by certificate No. 127; that, after his mother's death, his father sold to Ben. R. Mayer his half interest in the stock, and that he (plaintiff) as the heir of his mother and said Mayer therefore owned the 20 shares in indivisión; and he prayed that Mayer be cited, and after due proceedings that he be recognized as the owner and entitled to the community interest of his said mother in and to the ownership in the said Bank of Baton Rouge, as evidenced by certificate No. 127, of 20 shares of the capital stock, together with dividends, etc., and that the same be sold, to effect a partition. And there was judgment in the district court, about as prayed for, which judgment, with an amendment relating to the dividends, was affirmed by this court. Leury v. Mayer, 122 La. 486, 47 South. 839. Defendant (in the present proceeding) then offered the “petition” in the matter entitled “State ex rel. Louis F. Leury v. Bank of Baton Rouge et al.” (No. 906 of .the docket of the district court) and the answer of the bank thereto, which were also admitted over objection, and in which petition Léury sets up his claim to stock (as stated in the petition in the other suit) and alleges that his father “sold, transferred, and delivered unto one Ben. R. Mayer all his right, title, and interest in, and to, the said certificate of stock, * * * known as certificate No. 127, * * * and the said certificate was accordingly transferred on the books of the said Bank of Baton Rouge by order of the said Ben. R. Mayer, and a new certificate issued to the said Ben. R. Mayer in lieu thereof; * * * that he is entitled to be recognized as the one-half undivided owner of the said certificate No. 127; * * * and that the said bank should be ordered to deliver, free from any claim of the said Ben. R. Mayer or of itself, a certificate of stock in the name of petitioner for 10 shares of the capital stock of said bank,’,’ etc. To the petition in question the Bank of Baton Rouge excepted and (in case the exception should be overruled) pleaded the general denial, and the proceeding seems then to have been abandoned, the suit No. 947 having been instituted some days later. Defendant (in this proceeding) then offered the testimony of its assistant cashier (which was also admitted over objection), in which he undertakes to trace the stock originally represented by the certificate No. *142 127 into the certificates Nos. 227, 228, and 229 as follows, to wit: No. 127 (20 shares), issued to J. Edgar Leury, December 8, 1891; canceled November 9, 1894, and, in lieu thereof, No. 161 (10 shares), issued to Ben. R. Mayer, and No. 162 (10 shares), issued to Joe Mendelsohn. No. 161 (10 shares), canceled May 6, 1902, and, in lieu thereof, No. 210 (10 shares), issued to Ben. R. Mayer Grocery Company, Limited. No. 210 (10 shares), canceled April 9, 1904, and, in lieu thereof and of No. 216, No. 227 (20 shares), issued to Ben. R. Mayer. No. 162 (10 shares), canceled September 27, 1901, and in lieu thereof, and of Nos. 28 and 118, certificate No. 203, for 17 shares, issued to Morris Wolf.
No. 203 (17 shares), canceled May 6, 1902, and, in lieu thereof, No. 211 (17 shares), issued to Ben. R. Mayer Grocery Company, Limited.
“No. 211, for 17 shares [the witness says], was presented, properly indorsed by Ben. R. Mayer Grocery Company, Limited, and canceled April 9, 1904, and two shares of it issued to Ben. R. Mayer, in certificate No. 22S? which certificate is for 20 shares, including certificates 214 and 215; certificate 228 still remaining in the name of Ben. R. Mayer. The other 15 shares of certificate No. 211 were issued to B. R. Mayer April 9, 1904,- in certificate'No. 229, and is still standing in his name. * * * 'therefore [says the witness] the 20 shares represented by certificate No. 127 are now incorporated in Nos. 227, 22S, and 229, being 10 shares in certificate 227, 2 shares in certificate 228, and 8 shares in certificate No. 229.”
The judge a quo made the (alternative) writ of mandamus peremptory with respect to the certificate No. 175, and denied.it in all other respects, and relator has appealed.
Opinion.
The certificates Nos. 227 (for 20 shares) and 229 (for 15 shares) call for 35 shares, and, as defendant’s witness succeeded in finding in them only 18 of the shares originally represented by certificate 127, relator would from any point of view be entitled to a new certificate for. 17 shares. We are, however, of opinion that it is entitled to the writ of mandamus as prayed for; the defense set up and the evidence admitted in its support being insufficient and irrelevant. Neither defendant nor relator were parties to the suit in which Leury obtained judgment, and hence are in no wise hound by that judgment; and relator was not made, nor asked to be made, a party to the other proceeding, and hence is in no wise bound by it. On the other hand, it (relator) is shown to have acquired the certificates sued on in good faith for' value without notice, and in the usual course of business, and defendant is shown to have issued them to the world, thereby certifying that Ben. R. Mayer, the party from whom relator acquired them, was the owner of the shares of its stock which they represent. It is not asserted that any one else pretends to own the certificates in question, or that there are any other certificates outstanding, which represent the same shares, and, so far as we can see, the issuance of new certificates in place of those sued on will put defendant in n.o worse position than it now occupies, since the holders of such new certificates will simply stand in the shoes of the relators as holders of those sued on.
The trouble began when defendant permitted the surviving husband of Mrs. Leury or his transferee, Ben. R. Mayer, without proper authority, to cancel certificate No. 127, which represented stock that had belonged to the community, and issued new certificates, for such stock to. Mayer, who was then one of its officers, and who knew that the community had been dissolved by Mrs. Leury’s. death (Leury v. Mayer, 122 La. 486, 47 South. 839), after which defendant permitted the-new certificates so issued to be canceled and. replaced by others, and those others canceled and still others issued in their stead, and its. present proposition is that the innocent holder of the certificates last issued who acquired them in good faith for value without no *145 tice of any defect in title and in the usual course of business shall as a condition precedent to being recognized as the owner of the property which it thus acquired on the faith of its (defendant’s) certificate, issued to the world, seek out the heir of Mrs. Leury and litigate with him the question whether defendant is accountable to him for stock, or the value of stock, inherited by him from his mother, and of which .defendant was the custodian, and shall seek out the Whitney Central National Bank (from which relator acquired the certificates) and litigate with that institution the question whether it can be heard now to'set up some adverse title to the property which it sold with the warranty that our law implies.
It appears to us that such a proposition would have been untenable at any time, and that it is rendered more so by Act No. 180, p. 370, of 1901, which provides:
“That the delivery of a stock certificate of a corporation to a bona fide purchaser or pledgee, for value, together with a written transfer of the same, or a written power of attorney to sell, assign and transfer the same, signed by the owner of the- certificate shall be a sufficient delivery to transfer the title as against all parties: but no such transfer shall affect the right of the corporation to pay any dividend due upon the stock, or to treat the holder of record as the holder in fact, until such transfer is recorded upon the books of the corporation, or a new certificate is issued to the person to whom it is so transferred.”
It is true that the act thus cited was passed a few months after the issuance by defendant of the last of the certificates (to which its assistant cashier refers in his testimony) to Mayer, but it was passed several years before relator acquired the certificates upon which it sues, and the defendant was notified nearly two years before such acquisition (by the suit to which it was made party) of the claim that Leury was setting up; yet it continued to hold Mayer out to the public as the owner of the stock represented by the certificates here sued on, and of the certificates, and relator, more than two years after the passage of the act of 1904, parted with its money upon the faith of that holding out and in the belief that it was acquiring a valid title to the certificates, and all that they call for. The situation as here presented is far from being as bad as though the original transfer of the certificate No. '127 from J. Edgar Leury to- Ben. R. Mayer had been forged, or the certificate had been lost, or stolen, but, even if it were that bad, the defense here set up would not be good, because the original owner of the stock would have no right of recovery as against relator, as the present owner, not of certificate No. 127, but of the stock represented by other certificates. The rule upon that subject is stated in a recent work as follows:
“When certificates of stock have been transferred under a forged assignment and power of attorney, or when they have been lost or stolen, without negligence, after having been indorsed or assigned in blank, and have been transferred to the finder or thief, the true owner may recover the certificate from the transferee, or any subsequent transferee; or he may join him in a suit against the corporation to compel a transfer, or retransfer, on its books, according to the circumstances; or he may maintain an action for conversion -against the transferee to recover the value of the -stock even after the latter has sold and transferred the same to another. But the owner of shares which have been transferred by the corporation on its books under a forged power of attorney has no right of action against a bona fide purchaser of the shares who purchased not the original certificates, but a new certificate issued by the corporation.” Marshall on Corporations (1902) pp. S44, 321; Cook on Corporations (0th Ed. 190S) pp. 1049, 1070, 1140, 1141.
From the brief filed by the learned counsel for relator we find that in Re Bahia, etc., v. Railway Co., L. R. 32 Q. B. 584, the English court, holding that the purchaser or pledgee of stock is required to. look no further back than the registry of the last transfer, said:
“That the issuance by a corporation of a certificate for its shares of capital stock is a declaration by the company to all the world that the person in whose name the certificate is made out, and to whom it is given, is a shareholder in the company, with the intention tint *147 it shall be so used by the person to whom it is given, and acted upon in the sale and transfer of shares."
IVe find, nothing in the jurisprudence of this court which conflicts with the doctrine thus stated, the subjoined list of eases including all which seem to have any bearing upon the subject, to wit: Chapman v. N. O. Gaslight & B. Co., 4 La. Ann. 153; Smith v. Ores. City & Co., 30 La. Ann. 1378; Factors & Ins. Co. v. Marine, etc., Co., 31 La. Ann. 140; Reid v. Commercial Ins. Co., 32 La. Ann. 546; Pitot v. Johnson et al., 33 La. Ann. 1286; De St. Romes v. Levee Steam Cotton Press, 34 La. Ann. 419; Woodhouse v. Insurance Co., 35 La. Ann. 23S; Fee v. N. O. Gaslight Co., 35 La. Ann. 413; Ribet v. Bataille et al., 35 La. Ann. 1171, Mineral, etc., Co. v. Deblieux & Letory, 40 La. Ann. 155, 3 South. 726; Kern v. Day, 45 La. Ann. 74, 12 South. 6; State v. N. O. Cotton Exchange, 114 La. 324, 3S South. 204’.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended in so far as to make the mandamus peremptory as prayed for, and, as amended, affirmed.