DELAWARE-NEW JERSEY FERRY CO., a corporation of the State of Delaware,

*vs.*

SAMUEL P. LEEDS and DELAWARE MORTGAGE INVESTMENT CO., a corporation of the State of Delaware.

*New Castle, July* 11, 1936.

*Paul Leahy,* of the firm of Ward & Gray, for complainant.

*Charles F. Richards,* for Delaware Mortgage Investment Company.

*David J. Reinhardt, Jr.,* for Samuel P. Leeds.

THE CHANCELLOR: The facts set forth in the foregoing statement are derived from the answer of Leeds, and in view of the motion for a decree notwithstanding his answer are to be taken as true.

The bill seeks an adjudication of title to the particular 716 shares of stock now registered in the name of Delaware Mortgage Investment Company. Neither defendant has filed a cross-bill seeking relief against the complainant in case title to the shares in question is adjudged to the other. Whether such a cross-bill would be proper, I am not called upon to decide. The question as shaped by the pleadings is whether the particular 716 shares mentioned therein with their dividend rights shall be taken from Delaware Mort-

gage Investment Company, the party registered as the owner thereof, and awarded to Leeds.

Leeds makes the contention that Delaware Mortgage Investment Company is not a bona fide purchaser for value. He does not claim that the element of notice of his rights vitiates the title of Delaware Mortgage Investment Company. He questions only the nature of the consideration which Delaware Mortgage Investment Company gave for its stock.

When security is given to protect an antecedent debt, the consideration for the giving the same is not such a consideration as will sustain the character of a bona fide purchaser for value. *Royal Ins. Co. v. Simon, et al.,* 20 *Del. Ch.* 297, 299, 174 *A.* 444; *Ferris v. Chic-Mint Gum Co.,* 14 *Del. Ch.* 232, 124 *A.* 577; *Lockwood v. Bates, et al.,* 1 *Del. Ch.* 435, 12 *Am. Dec.* 121. Though, under this principle, it may be true that when the stock was deposited as collateral with Delaware Mortgage Investment Company that company could not be regarded as a purchaser for value against the claims of the rightful owner, yet what subsequently occurred altered the aspect of the situation, for Garlick and Delaware Mortgage Investment Company agreed that the latter might have the stock in consideration of cancellation of his debt. Prof. Pomeroy states that the authorities are in conflict upon "whether the complete satisfaction and discharge of an antecedent debt, without the surrender or cancellation of any written security by the creditor, will be a valuable consideration," such as to support the defense of a *bona fide* purchaser. The numerical weight, he concedes, supports the affirmative of the question. 2 *Pomeroy Equity,* (*4th Ed.*) § 749. Whether the creditor in this case surrendered the bond and mortgage which evidenced the debt does not appear. The inference which one draws from the text found in the paragraph above cited from Pomeroy is, that where the satisfaction of the antecedent debt is shown not by an act of the creditor, but depends solely upon verbal testimony, courts as a matter of policy ought to

refuse to recognize the alleged satisfaction as a new consideration. While logically verbal evidence of satisfaction might be said to be effective to transmute what was a past consideration into a present one, yet the opportunity for fraud upon the rights of third persons is so great, if a past transaction is allowed to be colored by "the verbal testimony of witnesses after the event has disclosed to the creditor the form and nature in which it is to his interest to picture the transaction," that, in the judgment of Prof. Pomeroy, it would be clearly impolitic to allow the testimony to have weight. In the instant case, however, there can be no danger on that score, for Leeds himself admits what the Delaware Mortgage Investment Company avers, *viz.*, that in consideration of receiving the stock the debt was thereby satisfied. Many cases are cited in the notes to the text above referred to in Pomeroy where the rule was adopted that a satisfaction of an exisiting debt, though evidenced only by verbal testimony, sufficiently shows a valuable consideration. Not only so, but an extension of time has been held likewise to show such a consideration. See the cases cited by Pomeroy in the note on *p.* 1535 of the cited volume. It is not necessary for the court in this case to determine whether the rule of the cases or the rule of policy advocated by the distinguished author of *Pomeroy's Equity Jurisprudence,* should be applied to satisfactions of debt evidenced only by verbal testimony. That as a general proposition the satisfaction of a past debt is a valuable consideration in support of either a promise or title, will not be questioned. The admission of Leeds that there was such satisfaction of a past debt, removes any necessity for considering the nature of evidence that ought to be demanded to show it. Under the circumstances of this case, I conclude that the character of a purchaser for value without notice is attributable to Delaware Mortgage Investment Company.

We now come to the question of whether Delaware Mortgage Investment Company, in view of its being a *bona*

*fide* purchaser for value, has a right to keep the stock and receive its dividends.

That Garlick wronged Leeds cannot be questioned under the facts as shown. Whether he could give them an innocent complexion, I do not know. His account of the transaction has not been disclosed. From the facts which appear, he had no right whatever to cause the shares of the complainant to be issued to him in place of Leeds in exchange for the old New Castle-Pennsville Ferries stock. The latter stock was registered in Garlick's name. He endorsed the certificate for transfer and delivered the same to Leeds. It does not appear whether or not Leeds allowed the old stock to continue to stand in Garlick's name from April 16, 1929, to date. He may have. If so, and Garlick was thereby enabled, by virtue of his position as secretary of the old company, to induce the complainant to issue its stock in the name of Garlick instead of Leeds, I do not see how Leeds can escape the imputation of negligence and the consequences which the law deems to flow therefrom. If it was negligence in him to leave Garlick amid circumstances which afforded him an opportunity to make dupes of others, then the principle of law would be applicable to him, that where, by a wrongful or unauthorized act, two innocent persons have been placed in a situation where a loss must be borne by one of them, it falls on the one who first trusted the wrongdoer and put in his hands the means of inflicting the loss. *Schumacher v. Greene Cananea Copper Co.,* 117 *Minn.* 124, 134 *N. W.* 510, 38 *L. R. A. (N. S.)* 180, *Ann. Cas.* 1913 *C,* 1115. That is how the matter stands if Leeds' negligence was responsible for Garlick's opportunity to commit the fraud. The principle quoted would come to the relief of the complainant as well as of Delaware Mortgage Investment Company, if Leeds' negligence caused the complainant to be an innocent victim of Garlick's misconduct.

But so far as Delaware Mortgage Investment Company is concerned, it is not with Garlick's fraud upon Leeds and the bearing of it upon the complainant's rights or liabilities

to Leeds, that we are concerned. In tracing back along the trail of circumstances which lead to the title of Delaware Mortgage Investment Company, that company is entitled to insist that the inquiry shall stop at the point where the complainant issued its certificate to Garlick. What preceded that event and whether the complainant was justified or not in issuing the certificate, are matters with which Delaware Mortgage Investment Company, as it had neither a part nor share in creating the situation and was entirely free of all notice of it, is in no way concerned.

The certificate which the complainant issued to Garlick was in regular form and disclosed on its face all the *indicia* of genuineness. The contrary is neither contended for nor even intimated. When it delivered the certificate to Garlick, it put it in the course of currency. It conferred on Garlick the power to show to others unmistakable evidence of the complainant's formal admission that Garlick was one of its stockholders in the number of shares thereon indicated. If an innocent purchaser for value cannot rely on the verity of what the complainant itself represented by its certificate to be true, there could be no security whatever in transactions of purchase and sale of stocks. Confidence which is the support of all business relations would be destroyed on a vast and incalculable scale.

The corporation will not be heard to deny that the representations of the certificate are true. In *Holbrook v. New Jersey Zinc Co.*, 57 *N. Y.* 616, the court said:

"It cannot now be denied, that if a corporation having power to issue stock certificates does in fact issue such a certificate, in which it affirms that a designated person is entitled to a certain number of shares of stock, it thereby holds out to persons who may deal in good faith with the person named in the certificate, that he is an owner and has capacity to transfer the shares. This proposition does not rest on any view of the negotiability of stock but on general principles appertaining to the law of estoppel. * * * When the defendant issued its certificates to William T. Riggs, it affirmed to all persons who might deal with him, that he owned a certain portion of its capital stock and had full power to transfer it. Any purchaser has a right

to rely upon this statement, and to claim the benefit of an estoppel in its favor * * * . The certificate itself must be regarded as a continuing affirmation of the ownership of Riggs and his power over the stock until it is withdrawn in some manner recognized by law."

To the same effect are the following: *State ex rel. Louisiana State Bank v. Bank of Baton Rouge,* 125 *La.* 138, 51 *So.* 95, 136 *Am. St. Rep.* 332; *Brown v. Wright, et al.,* 48 *Utah,* 633, 161 *P.* 448; *Cincinnati, N. O. & T. P. R. Co. v. Citizens' Nat. Bank,* 56 *Ohio St.* 351, 47 *N. E.* 249, 43 *L. R. A.* 777; *Re Bahia, etc., v. Railway Co., L. R.* 32 *Q. B.* 584; 11 *Fletcher, Cyc. of Corp. (Perm. Ed.)* § 5168; 12 *Id.* § 5557.

It follows that Delaware Mortgage Investment Company is entitled to a decree declaring it to be the lawful owner of the 716 shares of the complainant's stock which the certificate evidences and to be entitled to the dividend declared thereon.

What rights Leeds, who holds no certificate of the complainant and has not been yet recognized by the complainant as one of its stockholders, may have against the complainant, if any, the present bill does not require to be decided. Let his rights in that regard be as they may, he has no right either to compel Delaware Mortgage Investment Company to surrender the stock standing in its name or to deprive it of the dividend duly declared thereon.

Decree in accordance with the foregoing.