161 A.2d 427 (1960)
CONTINENTAL THRIFT, a corporation of the State of California, Plaintiff,
v.
TWINLOCK, INC., a corporation of the State of Delaware, James G. Fuller, Alice Fuller, formerly Alice Morgan, James H. Gordon, C. Parke Masterson, Victor Ghezzi, Charles F. Krause, Jr., Joseph Lavorata, Norman dePlanque and Lemuel Bannister, Jr., Defendants.
Court of Chancery of Delaware, New Castle.
May 10, 1960.
*428 Louis J. Finger, of Richards, Layton & Finger, Wilmington, for plaintiff.
Ernest S. Wilson, Jr., of Morford, Young & Conaway, Wilmington, for defendant Twinlock, Inc.
A default judgment was entered against the two Fullers and Gordon.
The other defendants did not appear.
SEITZ, Chancellor.
Plaintiff corporation seeks to compel the defendant corporation ("defendant"), a Delaware corporation, to record on its books a transfer to plaintiff of 32,000 shares of defendant's Class B stock and to issue to plaintiff a certificate evidencing such ownership. Plaintiff's action is based upon the fact that it took the shares as collateral for a loan to the registered owner, one Fuller, and upon his default purchased them at a foreclosure sale.
The defendant caused the shares to be cancelled on its books after the foreclosure but prior to plaintiff's demand for transfer. It purported to take such action because of the conclusion of its board that the shares were issued without legal consideration. It defends this action on the ground that the shares were issued without legal consideration and plaintiff is not a bona fide purchaser for value. This is the decision after final hearing.
Assuming that the shares were originally issued to the registered owner, Fuller, without legal consideration, the question is whether the plaintiff was, nevertheless, in the position of a bona fide purchaser for value. On this issue plaintiff has the burden.
In October 1957, the plaintiff, which was in the business of lending money, admittedly lent Fuller the sum of $41,000 secured by pledge of the 32,000 shares of defendant's stock registered in Fuller's name. The loan was made principally in reliance on the security of the corporate defendant's stock after the plaintiff's president had examined defendant's financial statements and checked on its business prospects. Moreover, another official of plaintiff obtained a certified list of stockholders which showed Fuller as a registered holder of the shares he tendered in pledge.
At the time the loan was made plaintiff's president was aware that Fuller had a criminal record. There is a dispute as to the extent of the president's knowledge in this regard but I do not think it important to my decision since such record was not created by the present transaction. It also appears that plaintiff's president caused the loan to be made in the maiden name of Fuller's wife because of a belief that the banking authorities might criticize a loan made to a known criminal. However, Fuller endorsed the paper.
The pledge was not foreclosed until August 1958 and the corporate defendant does not in its brief detail any illegality in the foreclosure preceedings. I therefore assume their regularity. The plaintiff made a demand for transfer on December 18, 1958 but ascertained that on September 12, 1958 the board of directors had taken action to cancel the stock which was still registered in Fuller's name. When the demand was refused this action followed.
The board minutes of November 9, 1956, at which time the issuance of the shares in question was authorized, appear to indicate that the consideration for the issuance of certain stock (of which the present shares were a part) consisted of an option which Fuller represented his wholly owned corporation had to purchase the patent covering the product manufactured by defendant and a commitment from a brokerage firm to sell defendant's shares in the open market.
*429 The position of the defendant's counsel at oral argument was in the alternative. He argued that when a lender has knowledge that a prospective borrower has a criminal record involving a felony he lends him money secured by stock at his peril. In other words counsel argued that the bona fide holder provision of the Delaware Uniform Stock Transfer Act is not available to such a lender if there is any infirmity in the collateral. He argued alternatively that the plaintiff had a duty, in view of the facts known to it, to conduct an investigation before taking the collateral. Plaintiff replied that both propositions were without merit.
The defendant corporation is a Delaware corporation and the transferability of its shares is governed by Delaware law which, for present purposes, is the same as the Uniform Stock Transfer Act, see 8 Del.C. § 181 et seq. Under that law, a bona fide purchaser for value does not lose that status unless he is aware of facts which would lead a reasonably prudent man to suspect that the stock tendered to him was subject to a legal infirmity in the seller's hands. The same principle applies to a pledgor-pledgee relationship.
The corporate defendant argues that the evidence demonstrates that the plaintiff, through its president, was aware that Fuller was a convicted felon. Taking this to be true, I do not believe it automatically follows therefrom as a matter of law that a lender in such a situation accepts stock collateral for a loan at his peril. Defendant corporation also emphasizes that the loan was made to Fuller in his wife's maiden name to deceive the California banking authorities. Such was the fact but, once again, it does not automatically follow from this deceitful act that plaintiff took with notice of any infirmity with respect to the collateral submitted by Fuller.
I am satisfied that it is a question of fact as to whether plaintiff is a bona fide purchaser for value. Defendant argues that plaintiff did not investigate when it was under a duty to do so because of the facts known to it and described above. Assuming that it had such a duty, let us see what a reasonable investigation would have revealed.
This transaction must be judged on the basis of the knowledge which plaintiff had or should be charged with at the date the loan was made.
I start by accepting the defendant's contention that the original consideration for the issuance of the stock was the option and the brokerage agreement. I further assume that some time after the loan was made, but unrelated thereto, the defendant through its officials began to question whether Fuller actually was able to give the corporation the consideration allegedly promised.
At the time the loan was made by the plaintiff corporation the shares in question were duly registered in Fuller's name on defendant's books. Certainly in the average case a lender would be obliged to check no further. Compare Delaware-New Jersey Ferry Co. v. Leeds, 21 Del.Ch. 279, 186 A. 913. But let us assume that defendant was required to check further. The minutes of the board meeting of defendant at which the issuance of the shares was authorized would have recited the receipt of legal consideration therefor which the presumably independent board deemed adequate. Consequently, even if the plaintiff's officials had inquired about the record basis for the issuance of the stock, they would have been reassured. Certainly it is not reasonable to suggest that plaintiff's officials were required to ask defendant's officials to affirm the validity of their prior action under these circumstances.
Assuming, therefore, that plaintiff had a duty to investigate, it is my conclusion that reasonable investigation would not have revealed anything which would have thrown doubt on the validity of the pledged stock. It will be remembered that the Uniform Stock Transfer Act was passed in order that stock certificates might be used in *430 the market place without unreasonable restraints and burdens on their free transferability.
If an additional independent basis for a decision in plaintiff's favor is needed, it is found in the negligence of defendant's directors in failing to confirm the existence of the consideration allegedly to be received for the stock. It would have been a simple matter to do at the time. The fact that they were to receive some of the stock seems to have lulled them into inaction, although they also knew Fuller had a criminal past. Compare E.I. duPont de Nemours & Co. v. Laird, 24 Del.Ch. 152, 8 A.2d 162.
I conclude that plaintiff sustained its burden of proving that it was a bona fide purchaser for value. It follows that it is entitled to have the shares registered in its name and a new certificate issued.
Present order on notice.