State ex rel. Goodloe vs. Register.

## No. 11,716.

STATE EX REL. JAMES L. GOODLOE VS. JOHN S. LANIER, REGISTER
OF THE LAND OFFICE.

The repealing effect of Act 95 of 1890 has withdrawn from the Register of the Land
Office the ministerial duty of selling the land claimed by relator.

The act is not void; if voidable, it can not be annulled in *mandamus* proceedings
not conducted contradictorily with all parties concerned.

It does seem that the Legislature had the authority to vest title to land in the
Pontchartrain Levee District to avoid to some extent the burdensome taxation
required to defray the expenses in making needful improvements.

APPEAL from the Civil District Court for the Parish of Orleans.
Monroe, J.

*John L. Kennedy* and *Kernan & Wall* for Relator, Appellant.

*M. J. Cunningham*, Attorney General (*Thomas J. Kernan* of Counsel), for Defendant, Appellee.

The opinion of the court was delivered by

BREAUX, J.  James L. Goodloe, applied to the Register of the Land Office to buy certain State lands.  He made a tender of the price.

The Register refused the application on the grounds that the lands are in the Pontchartrain Levee District, and that by Sec. 12 of Act 95 of 1890, they are vested in the Board of Commissioners of that district, and that he has no power to sell them.  The writ of *mandamus* to compel the respondent to sell the land, and issue patent to the relator, issued at the instance of the latter, and was decided against him.  He prosecutes this appeal.

By statute it is declared that in order to provide additional means to carry out the purposes of that act, the State lands, subject to overflow, embraced in grants by Congress for levee and drainage improvements in the district became vested in the Board of Commissioners after having furnished and recorded a list of the lands as required by the terms of the act.  The proceeds of the sale of these lands are deposited in the State Treasury to the credit of that levee district, subject to the warrants of the president of the board.

The lands claim d have passed out of the State, and under a

statute of the State are now held by the Pontchartrain Levee District.

It is not the duty of the Register of the Land Office to issue patents to lands thus transferred. The ministerial functions of the defendant ceased, after the lands had been listed, in accordance with the terms of the Act 95 of 1890.

*Mandamus* does not lie unless the character of the act is ministerial and imposed by law. The legislative will has withdrawn from him the authority to sell the property; he can not treat the statute as an absolute nullity. There is, at least, a collateral issue. The lands are held by a corporation organized to carry into effect public improvements. The questions involved are disputed and require legal controversy for their settlement contradictorily with parties in interest. Courts will not, in a *mandamus* proceeding, undertake to decide collateral disputed questions without giving interested parties opportunity to be heard.

The next question we are called upon to consider is, can a party raise objection to the constitutionality of an act whose right it does not affect, and who is without interest?

The relator, it is true, has offered to become a purchaser and has made a tender of the price. As the lands were not in the market, this could not have the effect of vesting him with title. Whatever effect, as between parties who desire to become purchasers of lands from the State, such a tender may have, the formality observed would have no effect against the Land Register, whose ministerial functions have been withdrawn by statute. " The statute is assumed to be valid until some one complains whose right is invaded."

Says Mr. Cooley in his work on Constitutional Limitations, p. 199, and further: " Nothing will generally appear to show that the act is not valid: and it is only when some person attempts to resist its operation and calls in aid of the judicial power to pronounce it void, as *to him, his property* or *his rights*, that the objection of unconstitutionality can be presented and sustained. Respect for the Legislature, therefore, concurs with well-established principles of law, in the conclusion that such an act is not void, but voidable only; and it follows, as a necessary legal inference, from this position, that this ground of avoidance can be taken advantage of by those only who have the right to question the validity of the act " (italics ours), not

third persons, who have no right preceding the declaration of unconstitutionality.

The relator, through counsel, argues that under the Constitution, the lands of the State can not be granted to any corporation, public or private. The respondent, in answer, argues that he has no further control or power over the lands.

He, it is manifest, must be reinvested with authority before *mandamus* can issue against him.

To the extent that the statute withdrew his power, it must be held not violative of any principle of the Constitution.

No ministerial duty rests on the Register of the Land Office to issue patents under a law surely repealed in so far as relates to his functions.

We rest our conclusion on the foregoing propositions. Nevertheless we assert that we have not, after having considered the argument of unconstitutionality, reached the conclusion that Act 95 of 1890 is unconstitutional. The lands were vested in a board for public improvement, and to avoid, to some extent, taxing the public. The corporation is not vested with any right to carry out purposes of its own.

It is therefore ordered, adjudged and decreed that the judgment appealed from is affirmed at appellant's costs.