PROVO STY, J.
After relatrix and her minor child had been put in possession of the estate of her deceased husband, Pritz Jansen, by judgment of court, she applied to the defendant company to transfer to their names certain shares of its capital stock theretofore subscribed and paid for by the decedent and standing in his name on its hooks, and, on its refusal to make the transfer, brought the present mandamus suit, individually and as tutrix. Needless to mention that it is as partner in community and as legal heir that she and her child have thus succeeded to the decedent.
The reason assigned by the defendant company for its refusal to make the transfer is that a corporation owes to its stockholders the duty to protect their interest in its stock, and is liable to them! for any loss resulting from a failure in this duty, and that defendant has been informed that the shares of stock asked to be transferred did not belong to the decedent but to his father and mother.
It seems that the parish priest, Pather Teurlings, who is the under tutor of the minor, called at the office of the defendant company, as a friend of the family, to have the transfer in question made, and, in course of conversation, mentioned to the secretary of defendant that there was an entry in the handwriting of the decedent • in an account book left by him at his death reciting that the shares of stock in question belonged to his (the decedent’s) father and mother.
The secretary was asked to state “slowly, distinctly, and clearly exactly” what Pather Teurlings told him, and he answered:
“Pather Tuerlings told me some of the stock was for Pritz Jansen’s father and Pritz Jansen had kept a record of it at his home in a book that he kept for this purpose.”
Pather Teurlings was asked to state exactly what he told the secretary of defendant company, and he answered:
“I told Mr. Debaillon that the decedent’s (Pritz Jansen’s) books showed that he had bought stock for his father and mother, not that the stock belonged to his father and mother.”
And he proceeded. to make the following explanation:
“Since I am the cause of this trouble, I will give the origin of it. It is my ignorance of law proceedings. I thought that in an inventory, not only assets, but also debts, should show, and therefore I stated truthfully to the association when I asked for advice. The books of Pritz Jansen are kept as I keep my books. I have borrowed about $10,000 to finish this church from my own relatives and as money is paid back to me I invest that to protect them, my creditors, who have loaned me money, but whatever stock I buy in the Bank of Lafayette or in a department store I keep full control of merely as a protection to my creditors and as did Mr. Jansen, as his books show. He invested that in order to protect those that he owed, but he remained owner of the stock, assumed all, owing no obligation to the parties for whom he bought. Mr. Pritz Jansen’s parents knew nothing about it when he bought that stock. His entry in the book bought for them because he owed them, but not to make them the master of that stock. He remained the master of that stock.”
Pather Teurlings’ knowledge concerning any interest .which the father and mother of decedent might have in this stock was derived wholly from the entries in the account books. If, therefore, he told the secretary of defendant company that the stock belonged to the parents of decedent he made the statement as the result of an inference he had drawn from the said entries. The probability is that he did not mean to impart to the secretary any different information from *529 that which he has given to the court in his testimony. Hence all that is known positively is that decedent was indebted to his father and mother in some amount (equal, probably, to the face value of this stock), and that after he had acquired this stock he made this hook entry. Whether he was thus indebted at the time he acquired the stock, and -whether he intended to acquire it for them and not for himself, and whether he paid for it with his own money or with that for which he was thus indebted to his parents, is not known. From the fact of his having made the acquisition in his own name, we must infer that he acquired for himself; for if he had intended to acquire for his father and mother he would obviously have acquired in their names.
[1] And he must be held to have continued to be owner, for nothing shows that his parents ever consented to become owners of the stock. Nothing shows that they ever purchased it from him, or otherwise acquired it. ¡The mere hook entry could not effectuate a transfer to them. Both for want of form and of acceptance it could not operate as a donation, and for absence of consent and lack of actual delivery it could not operate as a dátion en paiement.
[2] The only way in which the parents could he found to be the owners of this stock would be on the supposition that Fritz Jansen invested in his own name, or for himself, funds which they had intrusted to him, which he was holding as their agent. But, there being no proof of this, we should have to assume it, and this we cannot do, because such action on his' part would have been a breach of trust, or fraud, and the existence of fraud cannot be assumed, or presumed; it must be proved.
Apart from all this, however, the defendant company is not being asked to do anything that might be prejudicial to its stockholders or itself. Whatever rights the parents of Fritz Jansen may have to this stock will be enforceable by them against the plaintiffs as fully as against the decedent himself, no matter on what foundation those rights may he sought to be rested. With relation to this stock the plaintiffs but stand in the shoes of the decedent. No new title is sought to be created. The request is not that the decedent company recognize and give effect to any act of the decedent or of plaintiffs, but Simply that its books be made to conform to a state of facts created by the law itself — that its books be made to reflect the existing state of facts — the truth, and not the falsehood of Fritz Jansen being the owner of this sto'ck, when, as a matter of fact, he is no longer of this world. Evidently the defendant company is in this matter overzealous in the interest of its stockholders, or too fearful of consequences to itself.
Defendant, by way of further defense, says that mandamus does not lie for settling a controversy, and that there is a controversy over the ownership of this stock. And in that connection its learned counsel cites the cases of State ex rel. Phillips v. N. O. Gaslight Co., 25 La. Ann. 413; State ex rel. Plaisent v. N. O. R. R. Co., 38 La. Ann. 312; State ex rel. Goodloe v. Lanier, 47 La. Ann. 568, 17 South. 130; Badger v. City of New Orleans, 49 La. Ann. 804, 21 South. 870, 37 L. R. A. 540; State ex rel. R. R. Co. v. Smith, 104 La. 370, 29 South. 40; State v. Consumers’ Brewing Co., 115 La. 782, 40 South. 45.
In the first of these cases the plaintiff asked that defendant issue new certificates of stock to replace lost certificates; and the defense was that, inasmuch as the loss of the certificates was contested, mandamus did not lie. The court thought differently.
The second of said cases (State ex rel. Plaisent v. N. O. R. R. Co., 38 La. Ann. 312) was a mandamus' suit to compel transfer of stock, and defendant contended that the stock did not belong to plaintiff but to his daugh *531 ter. The court made the mandamus peremptory.
In the next of said cases in order, that of Goodloe v. Lanier, 47 La. Ann. 568, 17 South. 130, the plaintiff sought to compel the register of the state land office to sell to him certain lands alleged to belong to the state, and the defense was that the lands had beeff granted by the state to the Pontchartrain levee district, and hence that the register was without authority whatever to sell them. Of course, the plaintiff lost his suit. The defendant, however, having challenged the constitutionality of the statute making the grant to the levee district,, the court considered that question, and, we must assume, would have sustained the mandamus had the statute been found to be unconstitutional.
[3] In Badger v. City of N. O., 49 La. Ann. 804, 21 South. 870, 37 L. R. A. 540, the plaintiff sought to enforce a contract by mandamus — a thing which, of course, cannot be done.
State ex rel. R. R. Co. v. Smith, 104 La. 370, 29 South. 40, was a mandamus suit by the purchaser of certain lands from a levee board to compel the president of the board to execute a deed to the lands. The defense was a denial of the right of the board to sell the lands. The court sustained that defense. The reason why the mandamus was not made peremptory was that the court concluded that the plaintiff was not entitled to have the deed of sale executed.
In the last of said cases (State v. Consumers’ Brewing Co., 115 La. 782, 40 South. 45), the court found, as we have found in.this in this case, that the defendant had no good ground for refusing to make a transfer of stock bn its books, and said:
“Defendant has no interest to question the transfer, and mandamus is the only appropriate remedy to enforce the performance of a plain corporate duty.”
[4] And so say we. The trial court made the mandamus peremptory.
Judgment affirmed.