There are no other errors assigned, and there are none patent on the face of the record.

The judgment and conviction are therefore affirmed.

(99 South. 875)

No. 25207.

STATE ex rel. MARINE BANK & TRUST CO. v. GO-RO, Inc.

(Feb. 25, 1924. Rehearing Denied by Division B April 30, 1924.)

*(Syllabus by Editorial Staff.)*

1. Mandamus ⚙➙126—Mandamus to require transfer of stock under order of Securities Commission proper.

Where corporation, as compensation for brokers' services rendered to its predecessor, delivered to brokers certain stock forming part of stock held in escrow on order of the Securities Commission, it was no defense, in suit for mandamus to compel transfer of stock, that it should not have been issued from such fund; directors having knowingly voted to issue it, and Commission having authorized issuance.

2. Corporations ⚙➙149—When bona fide purchaser of stock entitled to be recognized by corporation as owner of stock, stated.

Where stock certificates are complete and signed by required corporate officers, they constitute a declaration that stock is legally issued; and where one purchases it in good faith for value in usual course of business and acquires certificates, he is entitled to be recognized by corporation as owner thereof.

3. Mandamus ⚙➙126—Mandamus lies to compel issuance of new stock certificates to transferee.

Mandamus lies to compel cancellation of stock certificates and issuance of new ones to transferee thereof.

Appeal from Civil District Court, Parish of Orleans; Wynne G. Rogers, Judge.

Mandamus by the State, on the relation of the Marine Bank & Trust Company, against Go-Ro, Incorporated. Judgment for plaintiff, and defendant appeals. Affirmed.

A. D. Danziger and P. H. Stern, both of New Orleans, for appellant.

Terriberry, Rice & Young, of New Orleans, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

ST. PAUL, J. The case is thus stated and disposed of by the district judge, whose opinion we adopt:

"This is a proceeding by mandamus by which relator seeks to compel respondent to take up and cancel four of its certificates of stock and issue other certificates therefor. The defense is that certificates were illegally issued.

"The facts, briefly stated, are that the original Go-Ro Manufacturing Company was the owner of patents covering what is known as the 'Go-Ro heater' and had been in business in this city in a small way for a number of years manufacturing and distributing the heaters. The directors of the company decided to enlarge the business, and to that end formed a new corporation with a larger capital stock. This new corporation was styled the 'Go-Ro Company, Incorporated.' Its board of directors was composed of the same gentlemen who had served the 'Go-Ro Manufacturing Company.'

"In order to create public interest, sell the new stock of the company, and to conduct a campaign to aid it financially, the firm of Smith, Luria & Co. was employed. They entered upon the task, advertised the stock, selling a number of shares. After some time had elapsed, the board of directors of the company, not being satisfied with the progress made by Smith, Luria & Co., decided to employ another firm of brokers, Phillips, Gerson & Phillips, represented by Mr. Phillips. This change was agreed to by Mr. Luria, who reserved his claim with the consent of all concerned for future disposition. Mr. Phillips, of the newly employed brokerage firm, objected to the financial scheme upon which the Go-Ro Company, Incorporated, was founded, and agreed to handle their business on condition that they would abandon the Go-Ro Company, Incorporated, and form a new company in accordance with the plan suggested by him. This was consented to by the directors of the Go-Ro Company, Incorporated, which was abandoned, and the 'Go-Ro, Incorporated,' was organized to take its place. The Go-Ro Company, Incorporated, had never been completely organized; its charter had never been recorded. The new company, 'Go-Ro, Incorporated,' took over all of its assets and its subscriptions to stock. The new company continued the business which had been intended for the old company, and derived the benefit of the advertisement, publicity and work of Smith, Luria & Co.

"In this situation the claim of Smith, Luria & Co. was presented for adjustment. It was never denied at any time by any director of the Go-Ro, Incorporated, not even by Mr. Goreau himself, that Smith, Luria & Co. was entitled to compensation. The board postponed the final settlement several times, but finally, at one of its meetings, it was voted to issue to Smith, Luria & Co. $12,500 of the stock of the corporation in full settlement. At this meeting Mr. Goreau cast the only dissenting vote.

"Upon the formation of Go-Ro, Incorporated, it had entered into a contract with the Go-Ro Manufacturing Company for the purchase of the patent covering the heater; the agreed consideration being $250,000 of the capital stock of Go-Ro, Incorporated. The Louisiana Securities Commission would not permit this stock to be turned over to the Go-Ro Manufacturing Company immediately but ordered it to be held in escrow by the Commission until such time as the new company should prove itself a growing concern.

"In accordance with the resolution of the board of directors of Go-Ro, Incorporated, it was out of this stock that the $12,500 of stock were to be issued to Smith, Luria & Co. The reason for this action was that the board considered the amount due by the Go-Ro Manufacturing Company, inasmuch as the formation of the Go-Ro, Incorporated, was primarily for the benefit of and to carry on the business of the Go-Ro Manufacturing Company. This plan was executed only after the Go-Ro Manufacturing Company had expressly agreed to it in writing.

"The Louisiana Securities Commission, after a full hearing, entered an order permitting the issuance of the stock out of $250,000 held in escrow. After this order was entered, an agreement was entered into between Go-Ro, Incorporated, Go-Ro Manufacturing Company, and the Marine Bank as transfer agent for the purpose of putting into effect the resolution of the board as approved by the Securities Commission. Some 10 days after this agreement was entered into, the said transfer agent issued the stock to Smith, Luria & Co., and it was thereafter taken over by them from Smith, Luria & Co. as collateral for a debt having no relation whatsoever to the various Go-Ro transactions.

[1] "The defense is not that Smith, Luria & Co. were not entitled to the stock they received as compensation for their services, but that it should not have been paid out of the $250,000 of stock placed in escrow for the benefit of the Go-Ro Manufacturing Company. This defense is not tenable. The directors of the company, themselves large stockholders, with interests adverse to those of Smith, Luria & Co. in this particular transaction, and know-

ing all of the facts voted to issue it. The manner and method of its issuance was a question for the decision of the corporation. The corporation having settled the question, and its decision having been approved by the Securities Commission, all interested parties are held to the knowledge that the stock was legally issued. Certainly the action of the board of directors and of the Securities Commission cannot be set aside because one of the members of the board is not satisfied therewith.

"The Go-Ro Manufacturing Company not only did not object to the transaction, but expressly approved and assented to it. If it be a fact, as claimed by respondent, that the Go-Ro Manufacturing Company is paying the debt, then Go-Ro, Incorporated, has no interest in contesting the legality of the stock, especially as the Go-Ro Manufacturing Company has assented to the plan.

"The defense that the Marine Bank had knowledge of the alleged illegality is not borne out by the record. The extent of the bank's knowledge was that Smith, Luria & Co. had a certain claim for services against Go-Ro, Incorporated, or its promoters. It assumed that the claim was against Go-Ro, Incorporated, the only company then active, and desired that the claim be liquidated. The bank knew nothing of the details. It is not shown that any of the officers of the bank or its employees were in any way connected with Go-Ro, Incorporated. When the stock was eventually ordered issued, with the order approved by the Louisiana Securities Company, and it was instructed to issue the stock, the bank could not do otherwise.

[2] "The certificates now held by the relator are complete in themselves and are signed by every officer of the corporation whose signature is required for their validity. This is a declaration to the world that the person named is the owner and that the stock was legally issued. The purchaser of the stock called for by the certificate who acquired in good faith, for value, and in the usual course of business and to whom the certificate, properly indorsed, is delivered, is entitled to be recognized by the corporation as the owner of the stock, and cannot be required as a condition precedent to such recognition to litigate his title with a third person.' State ex rel. Louisiana State Bank v. Bank of Baton Rouge, 125 La. Ann. 138, 51 South. 95.

[3] "The relief sought in these proceedings is, not that a particular officer or respondent corporation, of which Mr. Goreau is the president, be compelled to sign the certificates of stock, but to compel the corporation itself, Go-Ro, Incorporated, to cancel the certificates of stock and issue other certificates of stock therefor. In such a case mandamus is the proper remedy See Louisiana State Bank v. Bank of Baton Rouge, 125 La. Ann. 138, 51 South. 95.

"The mandamus will, therefore, be made peremptory."

The above covers 650 shares out of 700 in controversy. As to the other 50 shares, it is claimed that the purchasers of said stock were original subscribers to stock, and should have had their purchase filled out of treasury stock. With that we have nothing to do. If these subscribers to stock have not complied with their obligation, defendant must look to them to do so; but as to this stock it is sufficient that they hold assignments from the holders of record, and defendant has nothing to do but make the transfer on their books. Non constat but that they were so well pleased with their stock as to desire more of it.

### Decree.

The judgment appealed from is therefore affirmed.

Rehearing refused by Division B, composed of DAWKINS, LAND, and LECHE, JJ.