LOTTINGER, Judge.
This is a suit wherein the petitioner, Hansen E. Scobee, seeks a writ of mandamus issued addressed to the Continental Hotel Corporation, Arthur C. Lewis, Jr., its President, and Mrs. Geraldine C. Day, Secretary, all named defendants, directing them and each of them to deliver a stock certificate to petitioner as evidence of ownership of 50% of all of the Class-A voting common stock of said corporation. The Lower Court rendered judgment in favor of petitioner and against defendants, directing the defendants to deliver the said stock certificate to petitioner upon petitioner’s payment to the corporation of $1,-000.00. The defendants have appealed.
The reasons for judgment assigned by the Lower Court are as follows:
“Plaintiff in this suit seeks a writ of mandamus ordering the officers of the Continental Hotel Corporation to deliver a stock certificate to him as evidence of ownership of 50% of all Class-A voting common stock of said corporation. The defense is that Arthur C. Lewis, Jr. is the owner of all stock because plaintiff never paid any consideration for his alleged 50% interest and further that plaintiff relinquished any rights he had in said corporation in 1962 by verbal agreement with Mr. Lewis.
The facts showed that Scobee and Lewis were incorporators of the Continental Hotel Corporation. The Articles of Incorporation recite that Scobee had 1,000 shares and that Lewis and his wife had 1,000 shares, however, no stock certificates were ever issued. Mr. Fritchie testified that he took blank certificates along with other documents to the Lewis residence. It appears from the testimony the certificates were never properly signed and executed by the officers.
The Articles also recite that $2,000 was the paid-in capital. Actually nothing was paid in at the time of the execution. Mr. Lewis paid his $1,000 share as per a bookkeeping entry on December 31, 1958 as he had advanced substantial sums of money to the corporation. Mr. Scobee has never paid his $1,000.00.
Mr. Lewis testified that his original intention was for Scobee and him to be equal owners in the corporation. He felt that Scobee had the right to purchase a one-half interest but until he actually put up his $1,000.00 he had no actual interest. Mr. Lewis also testified that in 1962 Mr. Scobee told him ‘he wanted no part in it’ after learning that a substantial sum would have to be put into the corporation to keep it going. Thereafter, Mr. Lewis assumed complete control of the corporation and considered himself one hundred per cent owner. He advanced another $1,000 to purchase the rest of the stock, i. e., Scobee’s 50% interest.
Mr. Lewis contended that he never intended to deprive Mr. Scobee of his stock rights and only purchased Scobee’s interest after their verbal discussion in 1962 wherein Mr. Scobee advised him he wanted no part in the future business of the corporation.
Mr. Scobee testified and denied ever saying that he wanted no part in Continental ; that he always considered himself to be a stockholder; that the paid-in capital of $2,000.00 was to be paid by Scobee and Lewis, Inc.; that the first time he learned that Mr. Lewis had all the stock in Continental was in 1966 when Mr. Lewis’ deposition was taken in connection with another suit between Scobee and Lewis.
Defendant has failed to show by a preponderance of the evidence that the 1962 discussion ever occurred.
The evidence also showed that as of December of 1966 Mr. Lewis had loaned *612 Continental over $4,000,000; that Continental has lost money every year except one since its existence; that the corporate tax returns of Continental for 1958 and 1959 show Mr. Scobee to be owner of 50% of the stock with his acquisition date set forth as February 6, 1958. Mr. Lewis signed these two returns.
Mr. Scobee and Mr. Lewis are brothers-in-law. It was quite obvious to the court that very bitter feelings exist between them. This is most unfortunate. As originally contemplated both felt, I am sure, that by pooling their respective talents they could achieve much financial success. Things did not go as they planned. They were equal owners in Scobee and Lewis, Inc., the dissolution of which is in litigation also. I am convinced that when Continental was formed it was to be under the same arrangement as was Scobee and Lewis, Inc. Mr. Lewis admits this fact. The problem arises because Mr. Scobee never paid for his stock. What effect does this non-payment have upon Mr. Scobee’s rights ? As set forth in Article IX of the Articles of Incorporation plaintiff was designated as the owner of one-half of the capital stock.
LSA-R.S. 12:6, Subsections C, D, E, F, provide the machinery necessary to dispose of subscribers’ stock when payment has not been made. Continental did not comply with these statutory provisions before disposing of Mr. Scobee’s interest, therefore, this court feels that Mr. Sco-bee has remained the owner of 50% of the stock of Continental, subject to the claim the corporation has against him for the $1,000.00 purchase price.
The case of Ingraos and Co. v. Eastman, 179 La. 305, 154 So. 6, cited by defendant, is not applicable. In that case the court found that as a matter of evidence that a subscriber to stock in a corporation was not a stockholder; further in that case demand was made upon the subscriber to pay his subscription, which he did not do.
Defendant, in brief, has injected the principle that plaintiff should be denied relief herein because he is guilty of lach-es. The court feels that there are extenuating circumstances in this case which excuse Mr. Scobee from any alleged laches. The facts showed that he and Mr. Lewis had a parting of the ways in 1962 and a settlement of their affairs has been in litigation since that time; further he did not know of Mr. Lewis’ actions in taking his stock until 1966.
The exception of prescription is overruled. Plaintiff filed this suit shortly after he learned that he was no longer carried on the books of the corporation as a 50% stockholder.
The court finds that Mr. Lewis actually advanced $1,000.00 from his personal funds to pay for his interest. Mr. Sco-bee must do so also.
For the above reasons, there will be judgment herein in favor of plaintiff against defendants ordering a writ of mandamus addressed to Continental Hotel Corporation directing it to deliver a stock certificate to plaintiff as evidence of ownership of 50% of all of the Class-A voting common stock of Continental Hotel Corporation, upon plaintiff’s payment to said corporation of $1,000.00 owed to it under his subscription.
Judgment will be signed accordingly.”
In McWilliams v. Geddes and Moss Undertaking & Embalming Company, La.App., 169 So. 894, the Court was faced with a suit to compel the defendant corporation to issue to petitioner a stock certificate for petitioner’s ancestor in title’s interest in the defendant corporation. The facts established that petitioner’s ancestor did subscribe to one share of the capital stock of the corporation. The money for the stock was not paid for by petitioner’s ancestor but by another stockholder. This stock certificate was issued to the party making the payment after the death of petitioner’s ancestor. The Court ordered a mandamus to *613 issue compelling the defendant corporation to issue the stock to petitioner. In so doing, the Court considered the various defenses urged, many of which are similar to the ones now before us, and said:
“Assuming that her testimony is genuine, we do not see how the corporation can avail itself of this defense. True, no stock certificates were ever issued by the company until after Austin’s death; but it is well settled that a stock certificate is merely evidence of the ownership of the share of stock. See Succession of McGuire, 151 La. 514, 92 So. 40. On page 520 of 151 La., page 42 of 92 So., the Supreme Court said: ‘From the foregoing it is very plain that a certificate of stock is merely a paper evidence created for convenience, of the ownership of the share of stock; that it is not the thing which is in reality the subject of the ownership; that the thing which is in reality the subject of the ownership is the share of stock itself.’ (Italics Ours)
It is conceded that Austin actually subscribed to one share of the capital stock of the company and that it was paid for. Defendant claims that because another stockholder paid the company for Austin’s subscription, Austin did not become the owner of the stock. But as between Austin and the company, this fact is immaterial. The company’s real interest was in being paid for the subscription and it is not concerned with the source of payment.
The defendant company, having admitted that Austin subscribed to a share of stock and it actually received in cash the payment required for said share, mandamus will lie to compel said corporation to issue to the subscriber’s legal heirs the stock certificate. See State ex rel. Louisiana State Bank v. Bank of Baton Rouge, 125 La. 138, 51 So. 95, 136 Am.St. Rep. 332; State ex rel. Smit v. Lafayette Bldg. Ass’n, 147 La. 526, 85 So. 228, and State ex rel. Marine Bank & T[rust] Co. v. Go-[R]o, Inc., 155 La. 1072, 99 So. 875.”
Further, in the same decision the Court pointed out:
“The next contention of the defendant is that because of the fact that Austin did not receive any of the profits of the corporation and never made any claim for the issuance of the share of stock, that his heirs are now estopped from asserting that he was the actual owner of a share of stock. This point is without merit. The fact that a shareholder in a corporation does not demand dividends or is inactive in the management and control of the corporation cannot be successfully urged by the corporation as an estoppel against his claim that he is the real owner of the share of stock.
The defendant next contends that Willis has acquired title to this share of stock by the prescription of three years. In other words, the corporation issued to him the share of stock belonging to Austin; that he acquired it in good faith; and that by virtue of Revised Civil Code, Art. 3475, he is possessed of a title to the stock by prescription. This contention is unsound because the party defendant here is the corporation and it does not claim that it acquired the title to anything by prescription. Whether Willis can plead successfully the prescription of a three-year possessor in good faith can be only set up by him in an action between the company and himself in the event the corporation should cancel the share of stock issued in his name.” McWilliams v. Geddes and Moss Undertaking & Embalming Co., supra, Italics ours.
We agree with the findings of fact by the Lower Court and we feel that, based upon the decision of the Court in the Mc-Williams case, the judgment of the Lower Court was correct in holding in favor of the petitioner and, for said reasons, the decision of the Lower Court will be affirmed, all costs of this appeal to be paid by the defendant.
Judgment affirmed.