503 So.2d 661 (1987)
Frederick PREJEAN, et al., Plaintiffs-Appellants,
v.
COMMONWEALTH FOR COMMUNITY CHANGE, INC., et al., Defendants-Appellees.
No. 86-239.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1987.
*663 Sylvia R. Cooks, Lafayette, for plaintiffs-appellants.
Kenneth G. Miller of Debaillon and Miller, Lafayette, for defendants-appellees.
Before DOMENGEAUX, FORET and KNOLL, JJ.
DOMENGEAUX, Judge.
This action was originally brought as a petition for mandamus, but was subsequently converted into an ordinary proceeding to determine the status and rights of the petitioners. The petitioners, Frederick Prejean, Charles Prejean, Carol Zippert, and John Zippert, sought to have the defendant corporation recognize each of them as holders of one share of Class A stock in Commonwealth for Community Change, Inc., defendant herein. They alternatively assert that they are each subscribers of one share of stock in the defendant corporation and that the defendant has failed to cancel their subscriptions in accordance with La.R.S. 12:71.
The trial court rendered judgment in favor of defendant finding that there was insufficient evidence to find that any of the plaintiffs were shareholders in the defendant corporation. The trial judge pretermitted decision on whether the plaintiffs were subscribers because he found that the plaintiffs' pleadings did not warrant a judgment on this issue.
The plaintiffs have appealed from the lower court's judgment, arguing that the trial judge erred in failing to find that the plaintiffs were shareholders, or alternatively, subscribers, of the defendant corporation. They further contend that the trial court erred in failing to grant their motion for new trial.
The facts of this case as found by the trial judge were correctly stated in his reasons for judgment as follows:
"The facts of the case are that on February 19, 1969, the plaintiffs, along with Father A. J. McKnight and Paul Broussard were the incorporators of Commonwealth for Community Change, Inc. Father A. J. McKnight and John Zippert each put One Thousand Dollars into the corporation. The other three plaintiffs had never paid anything to the corporation either as a loan or as a payment for stock. All four of the plaintiffs did do work for the corporation for which they were not paid. During the early 1970's, the four plaintiffs moved away from Louisiana. As to the One Thousand Dollars that he had put into the corporation, John Zippert testified that his intent was that the money would be returned to him at a later time from the operation of the corporation. The corporation never issued stock to any of the plaintiffs and never agreed to issue stock for services rendered to the corporation. Originally, Father McKnight was listed as the only paid stockholder. Later, Wilbert *664 Guillory and a Mr. McZeal were also issued shares of stock for One Thousand Dollars. At the present time, Wilbert Guillory testified that there are five or six shareholders. Mr. Guillory also testified that he asked John Zippert several times to convert the One Thousand Dollars that he had given to the corporation into stock, but that Mr. Zippert did not give him permission to do so."
We first address the issue of whether the trial judge erred in failing to find that the plaintiffs were shareholders of the defendant corporation.
La.R.S. 12:52(C), in pertinent part, provides as follows:
"The consideration for shares issued... shall be paid in cash or in corporeal or incorporeal property, or services actually rendered to the corporation, the fair value of which is not less than the dollar amount of the consideration fixed for the shares, before the shares are issued. Upon payment of the consideration fixed therefor, such shares shall be considered as fully paid...." (Emphasis supplied).
It was uncontradicted at trial that the incorporators each agreed to purchase one share of Class A stock with income received from consultant work performed by one or more of the incorporators. In addition, a portion of Article VI of the articles of incorporation for the Commonwealth for Community Change, Inc. provides:
"This corporation shall be governed and controlled by a Commonwealth Council.... The first pre-requisit [sic] of being elected a member of the Commonwealth Council is ownership of one (1) Class A share of stock in the corporation."
Only two of the plaintiffs, Frederick Prejean and John Zippert, testified at trial. According to their testimony, there was an understanding among each other that each of the incorporators owned a share of Class A stock. John Zippert further testified that they were all under the assumption that they were shareholders since they were serving on the Commonwealth Council. The above beliefs and assumptions, however, are not sufficient under the corporation laws of this State to classify the plaintiffs as shareholders of the defendant corporation. (See La.R.S. 12:52).
The record indicates that a share of Class A stock costs $1,000.00. The record also reveals that no stock was issued upon formation of the corporation. Frederick Prejean claimed that he contributed a sum of money to the corporation for his consulting efforts which were sufficient to cover the amount necessary to purchase at least one share of Class A stock. According to his own testimony, however, the amount of $5,000.00 which he allegedly tendered to the corporation was only an estimate as he did not keep a record of his earnings. John Zippert testified that he and Reverend A.J. McKnight each advanced the corporation $1,000.00, but it was his understanding that this would be a loan to the corporation and not representative of the amount needed to purchase a share of stock.[1]
On the other hand, Plaintiff's Exhibit P-5, admitted in evidence at the trial, contains an Owner's Equity Schedule dated October 31, 1973, which shows nine (9) shares of Class A stock held in retained earnings. It also lists the names of nine (9) subscribers with an amount of money, representing services rendered to the corporation, next to each name. The greatest amount next to one of the subscriber's names is $577.03.
The trial judge found that there was insufficient evidence that any of the plaintiffs contributed the $1,000.00 in cash or in services to the corporation which was required in order to become a shareholder. When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review we should not disturb this factual finding in the absence of manifest error. *665 Watson v. State Farm Fire & Casualty Insurance Company, 469 So.2d 967 (La. 1985); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The trial judge evidently found the documentary evidence, that is, the Owner's Equity Schedule, more convincing than Fred Prejean's testimony where he estimated the amount of money derived from his consulting services which he contributed to the corporation. Inasmuch as this evidence furnishes a reasonable factual basis for the trial judge's ruling, we hold that the trial judge did not err in ruling that the plaintiffs were not shareholders of the defendant corporation.
We now turn to whether the trial court erred in failing to find that the plaintiffs were subscribers of the corporation's Class A stock. The plaintiffs maintain that the trial court's failure to address this issue was error in that the pleadings filed by the plaintiffs covered the stock subscription issue.
The plaintiffs alleged in their petition that they believed they were subscribers of Class A stock, but they failed to include a prayer for them to be held to such a status. La.C.C.P. Article 862 provides that a final judgment shall grant the relief to which the party is entitled, even if the party has not demanded such relief in his pleadings and the pleadings contain no prayer for general and equitable relief.[2] Therefore, the subscription issue was before the trial court who erred in not addressing it. We, thus, will consider this issue on appeal.
Article XIV of the articles of incorporation provide that the plaintiffs, as well as Reverend A. J. McKnight and Paul Broussard, are the incorporators of the Commonwealth for Community Change, Inc. Article XIV further provides that each incorporator agrees to take one share of Class A stock in the corporation at the issuance price of $1,000.00. This provision in the articles unambiguously recognizes them as subscribers of stock in the corporation and forms the basis of the subscription contract.
In Scobee v. Continental Hotel Corporation, 242 So.2d 610 (La.App. 1st Cir. 1970), the plaintiff, listed in the Articles of Incorporation as a shareholder but who never paid for his shares, sought a writ of mandamus to direct the corporation to deliver the stock certificates to him. The court found that the corporation did not comply with the provisions of La.R.S. 12:6 (now La.R.S. 12:71) in disposing of Mr. Scobee's stock upon his failure to pay and, as such, Mr. Scobee remained the owner of the stock subject to payment of the purchase price.
The present case is different from Scobee, supra, in that the articles of incorporation in this case list the plaintiffs as incorporators and not shareholders. The cases are similar, however, in that the corporations in both cases failed to dispose of the subscribers' stock in accordance with paragraphs C, D, and E, of La.R.S. 12:71.
Moreover, paragraphs A and B of La.R.S. 12:71 provide that when corporate existence has begun, no subscription contracts shall be revocable unless one of the grounds for the rescission of a contract is shown by either party. Inasmuch as no ground to rescind the contract has been alleged or proved, the subscription contracts have been and remain irrevocable since the filing of the articles of incorporation. La.R.S. 12:25 and 12:71. Further, because the defendant has not disposed of the plaintiffs' stock pursuant to the provisions of La.R.S. 12:71, we hold that plaintiffs are still subscribers of Class A stock in the defendant corporation.
The defendant has reurged its defense of laches on appeal in the event we would hold the plaintiffs to be subscribers of the corporation. Laches is an equitable doctrine and thus each case rests upon its own set of circumstances. Its purpose is to bar prosecution of stale and antiquated claims which would cause injustice if pursued. Molero v. Bass, 322 So.2d 452 (La. *666 App. 4th Cir.1975), writ refused, 325 So.2d 609 (La.1976); Labarre v. Rateau, 210 La. 34, 26 So.2d 279 (1946).
The facts show that the plaintiffs and others conducted business for the organization from 1969 until the plaintiffs all moved outside of Louisiana in the early 1970's. The plaintiffs' names were reflected on the corporate books until at least 1973 wherein it showed that each of the plaintiffs had contributed services to the corporation in the amount of $577.00. In addition, John and Carol Zippert corresponded with the then president of the defendant corporation, Wilbert Guillory, as late as October 29, 1973. In late 1978, a letter written on behalf of the plaintiffs was sent to Reverend A. J. McKnight demanding that the corporation issue their stock certificates to them. Shortly thereafter, this litigation arose.
It appears that when the plaintiffs moved away from Louisiana, the corporation continued to conduct business until 1973, the year of the latest financial statements filed in the record. The record contains little, if any, mention of business operations from 1974 to 1978 other than a reference to a financial statement prepared in 1977 listing McKnight, Guillory, and Alfred McZeal as the only shareholders of the defendant corporation. The above would suggest to this Court that the corporation all but ceased to function until the plaintiffs expressed an interest to once again become active in the corporation. We note here that the suit in the instant case was originally filed March 28, 1979.
From the above, we find that the defense of laches should not be applied in this case to bar the plaintiffs from exercising their subscription rights.
Inasmuch as we hold that plaintiffs are still subscribers of Class A stock in the defendant corporation, and that the defense of laches is not applicable to their rights, plaintiffs are authorized to exercise their subscription privileges to the defendant's stock. As mentioned above, the issuance price for a share of Class A stock is $1,000.00. According to the record, each plaintiff has previously contributed consulting services to the corporation valued at $577.00. Plaintiffs can therefore become shareholders of Class A stock by each remitting $423.00 in cash, or alternatively by rendering a like amount in additional services provided the corporation is still operational.
By disposing of the subscription issue in favor of the plaintiffs, we find it unnecessary to address the issue of whether the trial court erred in failing to grant plaintiffs' motion for new trial.
Considering the foregoing, the portion of the judgment of the district court which held that plaintiffs were not shareholders in the defendant corporation is affirmed. The portion of that judgment which found that the issue of the plaintiffs' subscription rights were not before it is reversed, and plaintiffs are hereby authorized to exercise their subscription rights in the defendant corporation in a manner not inconsistent with this opinion.
Costs at trial to be equally divided between plaintiffs and defendants, and on appeal to be assessed to defendants-appellees.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] As of the date of trial, John Zippert had not received the $1,000.00 advanced by him. The most recent Accounts Payable schedule in the record dated October 31, 1973, reveals that the corporation is indebted to John Zippert in the amount of $1,075.00.
[2] For the record, we note that the plaintiffs' petition did contain a prayer for "... any and all relief allowed under equity and the corporate laws of the State of Louisiana ..."